Morphy, J.
Jean D. Pigneguy, Jun., one of four heirs of the late Eleonore Rabassa, the [widow of Jean Pigneguy, mortgaged his undivided fourth of two immoveables belonging to the estate, to secure the payment of three promissory notes of $1250 each, which he had executed in favor of Clement Ramas, in. 1840. Some time after, a sale of the property was made under an order of the Court of Probates, for the double purpose of liquidating the succession, and of effecting a partition among the heirs, which *451 had been prayed for by the said Jean D. Pigneguy, the only heir of age. Philippe Marsoudet, who was subsequently appointed administrator to the estate, filed an account of his administration, from which it appeared, that after the payment of the debts and charges of the succession, there was a sum of 82805 60, accruing to Jean Pigneguy, for his share or interest in the same. In this account, whieh was homologated on the 28th of February, 1842, the administrator mentions, that this amount must go to pay Jean Pigneguy’s three protested notes of $1250 each, to secure which, he had mortgaged his undivided fourth of the property sold; but that he does not know in whose hands one of these notes is. In March, 1843, Aristide Barré having become the purchaser at a sheriff’s sale, of the hereditary rights of Jean D. Pig-neguy, Jun., in the succession of his mother, took a rule on the administrator to show cause, why an execution should not be issued against him, under which his individual property should be seized, and sold to an amount sufficient to pay him the said sum of $2805 60, allotted to Pigneguy, whose rights he had purchased. The administrator, in answer to the rule, stated, that Pig-neguy had mortgaged his undivided portion of the property held in common between him and his co-heirs, to secure the payment ■of three notes exceeding in amount the sum of $2805 60, coming to him, and that the said sum, had been rateably distributed among, and paid to the mortgage creditors holding the said notes. There was a judgment below in favor of the administrator, and the plaintiff in the rule appealed.
The evidence shows, that the administrator was himself the holder of two of the notes executed by Pigneguy, and secured by mortgage on the property sold. These notes he filed, erased, and cancelled. He also filed the third note, on which he proved that he had paid the proportion coming to it, out of the sum of $2805 60. C. Claiborne, the holder of this last note, had obtained a judgment upon it against Pigneguy, in the- District Court, and had seized in the hands of the administrator, in February, 1842, any funds accruing to his said debtor, in the succession of his mother. Under these facts, it would seem that the appellant is without any claim whatever against the administrator, under his purchase of Pigneguy’s hereditary rights ; but it is contended *452 that the mortgage he granted on the property held in common between him and his co-heirs, was annulled, by operation of Jaw, ■in consequence of the partition; and that he was entitled to receive his proportion of the price it brought, in the same manner as if no such mortgage had been given. This pretension is attempted to be sustained under article 1434 of the Civil Code, but it is manifest that this article, especially when considered in connection with articles 1342 and 1343, does nothing more than carry out the legal axiom, resoluto jure dantis, resolvitur jus accipien-tis, which is embodied in articles 3268 and 3374 of the same Code; and it by no means follows, that the nullity of such a mortgage, which is pronounced in favor of the co-heirs or purchasers of the property, in whose hands it passes free from incum-brance, is to avail or enrich the mortgagor at the expense of his hypothecary creditors. If, in the partition of the succession, the mortgagor receives for his share an immoveable, the mortgage which he had before given on his undivided portion of all the property held in common continues to exist, but is restricted to, •and becomes absolute upon that immoveable. Art. 1434. If he is to receive in money his share of the common property sold, or partitioned in kind, the mortgage is transferred from the properly to its proceeds in the hands of his co-heirs. In accordance with these principles, and with a view to protect the rights of creditors holding mortgages against one of several co-proprietors, the Legislature, in an act approved on the 27th of March, 1843, (p. 44 of the Statute Book,) has provided, “ that if (in a partition) any •return of money be required to be made to any co-proprietor whose share is mortgaged, by reason of the share allotted to him being of less value than the other shares, then such sums of money shall remain in the hands of the parties bound to contribute it respectively, shall be secured by mortgage on their respective shares, and be subject to the demands of those creditors of their co-proprietor, who possessed mortgages or privileged claims against him, and according to the rank and priority of said creditors.” The rule, which is here so clearly laid down, where only a portion of his share is to be received in money by a co-proprietor who has mortgaged his undivided interest, must, we apprehend, be the same when he is to receive the whole of his portion *453 in money, and whether the same be in the hands of his co-heirs, or in those of an administrator. In the present case, the appellee being the holder of two of the mortgage notes executed by Pjg-neguy, was clearly entitled to retain his proportion of his debtor’s share in the proceeds of the property he had mortgaged. As to the third note held by Charles Claiborne, independent of his right to be paid.as a mortgage creditor, he had made a seizure in the hands of the administrator of the share or portion accruing to Pigneguy, long before the latter’s hereditary rights were seized and sold to the appellant, who is, consequently, without any claim whatever against the administrator under his purchase.

Judgment affirmed.

Rawle, for the appellants.
This is not an action of trespass; nor does plaintiff sue for damages ; yet the court reasoning upon it as such, has affirmed the judgment below, which declared that there has been an implied sale of the property. That there was no such sale; see Hullin v. The Second Municipality, (11 Rob. 97.) The only question here is, as in that case, whether the acts of the Municipality authorized plaintiff to claim under an implied sale. The opinion just rendered, is erroneous and at war with the decision in 11 Rob. 97. To entitle the plaintiff to damages, the defendants should have been put in mora. This is a condition precedent, and the want of it need not be pleaded, but may be taken advantage of at any time. Civ. Code, art. 1906. Hodge v. Moore, 3 Rob. 400. There was no sufficient evidence of the value of the land.